78 733
108 204

THE FIRE ASSOCIATION OF PHILADELPHIA *et al. vs.* FLEMING.

1. It is doubtful whether the evidence in this case warranted any recovery on the ground of a malicious arrest, and if any such arrest was made, it seems that the person making it acted beyond the scope of his instructions and the business he was employed to transact; nor does it clearly appear how his conduct was ratified by the defendant or its agents. If the defendant was liable at all, the finding was so excessive as to betray bias in favor of the plaintiff or prejudice against the defendant, or to show that the jury misapprehended the law applicable to the case.

2. Where a plaintiff brought suit for a malicious arrest, and the defendant neither assailed his character nor gave notice of any intention to do so, it was error to allow him to state that he had never been accused of crime and to sustain his reputation by such testimony.

3. Letters written between the attorney and the agent of a corporation, which was his client, containing confidential communications between the two, should not have been forced to be produced for use in evidence against the client.

4. Where the plaintiff was desired as a witness to appear before the grand jury in respect to an alleged arson, and he claimed to have been maliciously arrested at the instance of an insurance company which had insured the house burned, it was not admissible to introduce in evidence a record showing that the owner of the house had brought suit against the company and had recovered against it. Such evidence was irrelevant.

5. Where the arrest complained of was alleged to have been made by a detective acting for the company, it was admissible for the attorney for the company, who acted in its behalf, to testify as to the circumstances of the employment of the detective, and that the company had refused to authorize the institution of any criminal proceedings against the owner of the house which was burned. Such evidence was admissible to show good faith on the part of the company, and that they did not know of or authorize the proceedings, as well as to rebut the statement of another witness as to expressions of the attorney on this subject. At all events, it was admissible to mitigate the damages by showing want of malice.

6. A letter from an attorney to the agents of his clients containing confidential communications and asking for instructions in reference to the case, was inadmissible against such client.

7. The court should have charged, on request, that the act of a servant in the line of his duty alone binds a principal; and that directions of an attorney to stop a witness about to leave a city do not

justify an arrest, and such action, if had, was not in the line of duty of such servant or attorney so as to bind his client.

8. The advice of counsel will not operate to discharge his client from liability for damages, but it might make them merely nominal or might mitigate them.

May 9, 1887.

Verdict. Damages. Malicious Arrest. Evidence. Attorney and Client. Master and Servant. Before Judge Roney. Richmond Superior Court. October Term, 1886.

Reported in the decision.

Frank H. Miller, for plaintiff in error.

William H. Fleming; Foster & Lamar, for defendant.

Hall, Justice.

Fleming was a detective in the police service of the city of Augusta. This defendant, with other companies, had effected insurance upon the house of a person by the name of Goss. That house was burned. They believed, or affected to believe, that it was consumed for the purpose of getting the insurance, and they resisted the payment of the loss upon that ground. Fleming, who, according to the terms of his employment by the city of Augusta, could take no reward for such service, was employed to work up this case. He did work it up to a certain point; and he then left the city of Augusta and removed to Savannah, where he changed his business, ceasing to act as a policeman or detective. At this point, another detective, named Bagby, from Atlanta, took charge of the case. While the investigation of this alleged arson was pending before the grand jury, Mr. Fleming came from his home in Savannah to Augusta, and after having attended to the matter that called him there, he started to return. Mr. Carroll, who had been the counsel for this company, informed Bagby that he wanted Mr. Fleming before the

grand jury, and asked him to go and stop him. Bagby found Fleming at the depot, about to leave, and he said to him, " I want you in that Goss case," or something to that effect; Fleming considered it an arrest by Bagby. No authority to make the arrest was shown or demanded. Fleming expressed regret, saying he had paid his fare to the city of Savannah and was anxious to get there. Bagby went to the ticket agent, who refunded Fleming's fare. Fleming then accompanied Bagby down the street to the police headquarters. On the way, Fleming said to a person he met, " I am under arrest." Before reaching the police headquarters, he met Mr. Carroll, who had been in conference with him about the arson case frequently before this time. Fleming mentioned to him that he was disappointed in not going to Savannah. Mr. Carroll told him he would make that all right; but nothing was said as to his having been arrested by Bagby. When he got to police headquarters, however, he informed the chief of police that he was under arrest; and Bagby said, " Yes." Christian, the chief of police, said, " I will be responsible for him." Bagby then went up stairs in the same building to see the solicitor-general, from whom he procured a subpœna, which was immediately served upon Fleming ; and after the subpœna was served upon him, he went at large. Fleming did not think, until after all this had occurred, to ask by what authority he was arrested. He sued these corporations, and obtained a verdict of $1,000, for malicious arrest and false imprisonment. A motion for new trial was made upon a great many grounds, and was overruled. Upon some of the grounds of the motion, we think it should have been granted ; but before examining the special grounds, we prefer to take a wider and larger view of this case.

1. The provisions of law relating to malicious arrest are intended to protect and remunerate those who have been wantonly abused under color of authority. If such authority is assumed for purposes of oppression and wrong,

such action should be upheld. But we capitally doubt whether any case was made here at all; and we are not very well satisfied that any damage was incurred on account of the action complained of. It is clear that if any arrest was made at all, or if there was any compulsory detention of the party alleged to have been arrested, it was a constructive rather than an actual arrest and detention. It certainly does not appear, from the beginning to the end of this transaction, that any arrest was ever contemplated by Mr. Bagby; and if he did make an arrest, it was a trespass for which he alone was personally responsible. Fleming had never been charged with any crime in connection with this burning that the grand jury was investigating; and he knew, or ought to have known, that he was wanted only for one purpose, which was to testify. He had never disobeyed any subpœna, because he had never been served with one to appear and testify before the grand jury, and was therefore not in contempt of any process of the court. If Bagby acted in this way, he was acting beyond the scope of his instructions and the business he was employed to transact. We do not very clearly perceive how his conduct in this matter was ratified by this company or any of its agents. Fleming was kept away from his home only a single day. He was not treated with any indignity, or placed under any unusual restraint, even for a small portion of that day. It was not shown that his character was in the least affected; and we certainly think that if this company was liable at all, the finding against it was so excessive as to betray bias in favor of the plaintiff, or prejudice against the defendant in the original suit, or else show that the jury misapprehended the law applicable to the transaction.

2. The third ground of the motion for new trial is the first special ground we shall notice. Fleming was allowed, in testifying, to put his character in issue, and to state that he had never been accused of crime, and to sustain his reputation by such testimony, when his character had not

been assailed. Objection being made to the evidence, it was overruled; and we think improperly. We think it was improper to allow him to make this statement, because the defendant had not assailed, or given notice of an intention to assail, his character.

3. The next ground requiring any notice is the 5th ground of the motion for new trial, which relates to certain confidential communication, between an agent of this company, their adjuster, Mr. Prioleau, and Mr. Carroll, who was then acting as their attorney. The objection to it was, that in forcing the production of this correspondence, they were violating the confidence that existed between client and attorney, and which was protected under the law. That far, we think there was error, and that this testimony ought to have been repelled. These letters, it seems, had, under these circumstances, been put in evidence on a former trial; and for that reason, the court allowed them to go in evidence on this trial, over the defendants' objection. The reason, it seems to us, was insufficient. If error was committed on the former trial, it should have been corrected, rather than persisted in, on the present occasion.

4. There was a suit brought against this company by this assured, John M. Goss, and he had a recovery against them. That proceeding, over the objection of this defendant, was allowed to go in evidence. We are at a loss to see what possible issue this evidence could have illustrated. We think the evidence was not admissible, because it was irrelevant and impertinent.

5. Again, Carroll, the attorney, was sworn in the case, and he offered to testify as to the circumstances of the employment of Bagby, and that the company had refused to authorize the institution of any criminal proceedings against Goss. That testimony, when offered, was excluded. We think it was pertinent and proper, and should have been admitted. Bagby's instructions came from Mr. Carroll, who knew that the company had refused to prosecute

or have anything to do with this prosecution. The plaintiff's complaint was of the joint action of Carroll and Bagby, and in reply it was admissible to show by Carroll how he, Bagby and Prioleau understood the matter. The evidence was admissible to show good faith on the part of the company, and that they neither knew nor authorized the proceedings, and to rebut a statement of Twiggs as to what Carroll had said. Twiggs had testified to certain expressions of Carroll upon this subject, which Carroll denied having used; and he wanted to show what was the real truth of the matter. At all events, it was admissible to mitigate the damages by showing want of malice, if not to defeat the action.

6. Again, Carroll wrote to certain agents of this company, residing in the city of Louisville, for instructions in reference to this case, and communicated with them confidentially. They objected to the admission in evidence of confidential communications between their agent and attorney. The letter was admitted over their objection; and that is excepted to in the 8th ground of the motion. We think this was inadmissible, under the express provisions of the code, §3798, which protects all such communications.

Again, certain charges were asked of the court, which he refused to give, and which, we think, ought to have been given. (It is fair to the judge to say that the general charge does not appear in this record, so we cannot tell whether the requests were covered by the charge or not.)

7. The court was asked to charge that "The act of a servant in the line of his duty alone binds a principal. Directions of an attorney to stop a witness about to leave the city do not justify an arrest, and such action, if had, was not in the line of duty of such servant or attorney so as to bind his client." This charge should have been given.

8. Again, complaint is made that the court refused to give this charge: "The advice of counsel goes before the

jury as a circumstance in the case, which should weigh with other circumstances according to the facts, to relieve the defendants, or make the damages nominal, or make them more or less." That instruction in its entirety is not law. Whatever the advice of counsel may have been, it would not have inured to the discharge of the defendant from liability; but it might have made the damages merely nominal, or might have mitigated them, and, to employ the language here used, it might have made them more or less. With the exception referred to, we think that is a proper charge.

This disposes of all the special exceptions made to the ruling and charge of the court which we think it necessary to notice; and for these reasons, we think there ought to be another hearing of this case.

Judgment reversed.